## Ament's Executor *versus* Wolf.

In case of interfering surveys, if the owner of the younger title enter upon and occupy a part of his tract, and use the unenclosed woodland within the lines of his survey, as woodland is ordinarily used, this is not a constructive, but an actual possession of the woodland, and will give title thereto, under the Statute of Limitations, notwithstanding an entry by the owner of the elder survey upon another portion of his tract.

The constructive possession which the law attributes to the legal title, is ousted by such use of the woodland; and an actual entry by the owner of the elder title upon another part of his tract, is not sufficient to vest the possession in him as against the occupier under the younger survey.

ERROR to the Common Pleas of *Westmoreland county.*

This was an ejectment by Paul Brinker, executor of Anthony Ament, deceased, against Solomon Wolf, for a tract of forty acres of land, in Franklin township.

On the 26th June 1786, a warrant was granted to Euphan Moorhead, for 300 acres, including an improvement; on which a survey was made on the 24th May 1793, including the premises in dispute. And on the 17th June 1797, a patent was issued to him for the land within his survey. In 1816, Moorhead leased his tract to one Wigle, who made considerable improvements; and this possession, by his tenants, was kept up until 1830, when he sold the tract to Anthony Ament, the plaintiff's testator; by whom, and those claiming under him, the same possession had been ever since kept up.

On the 31st March 1788, Eli Coulter, the owner of an adjoining tract, called the "Breast-work Farm," took out a warrant for forty acres, and had a survey made on it, inside of the Moorhead survey, and along the line between the Moorhead and the Breast-work survey. This survey was never returned.

In 1799 or 1800, the tenants of the Breast-work Farm cleared over the line of the Moorhead survey, about five acres, and have ever since been in the possession of it. No part of the land, within the lines of the survey, under the warrant of 1788, was ever fenced, except these five acres; nor were there any other im-

[*Ament's Executor v.* Wolf.]

provements on it; nor did the warrantee, or his tenants, ever reside upon any part of it; but they used the residue of it as woodland, cutting and using the timber for fencing and other purposes, as woodland is ordinarily used by farmers. And the defendant's landlord, in whom the title, under the Eli Coulter warrant, was vested, claimed the whole of the forty acre tract by virtue of the statute of limitations.

On the first trial of the cause, there was a verdict and judgment for the plaintiff, under the instruction of the court, for the whole of the premises in dispute, except the five acres, in the actual occupation of the defendant. But this judgment, on error to this court was reversed, and the following opinion was delivered by

LOWRIE, J.—Wolf was the defendant below, and the action is ejectment. He had a survey made for himself of part of plaintiff's land and the boundaries marked. Afterwards (in 1799) he entered upon the land, claiming it as his own; improved, fenced, and cultivated part of it, and as it is admitted, "openly, notoriously, and exclusively used the woodland of the residue as farmers usually do," for more than twenty-one years, before suit was brought. The plaintiff entered upon his tract in 1816, without interfering with defendant's occupancy, and has kept up an actual occupancy of the rest of his tract ever since. The defendant's title was sustained for all that he had within his fences; but the court below treated his use of the woodland as only a constructive possession, and decided that it was overcome by the constructive possession that accompanies the right, as soon as the plaintiff went into actual occupancy of a part of his tract, in 1816. And in order to support the conclusion to which the court arrived in favour of the plaintiff, we must imply that it was meant, of course, to say, that the possession of the woodland continued constructively in the plaintiff from that time onward, notwithstanding the kind of use made of it by the defendant. This is the principle involved in the instruction, that the defendant had no title to the woodland, and this is complained of as error.

The case of Royer *v.* Benlow, 10 *S. & R.* 305, seems to favour the view taken by the court below; but the older cases, sometimes referred to for the same principles, are not relevant; for in those cases the adverse claimants had no boundaries other than their fences: 1 *S. & R.* 118; 2 *Id.* 438; 4 *Id.* 405; 7 *Id.* 135. The more recent cases, however, have more carefully and clearly defined what is actual occupancy; and they do most certainly decide that such a use as the defendant made of the woodland, in connection with his improved land, is actual, and not constructive possession; and, therefore, any constructive possession of the plaintiff, claimed to arise from his possession of the rest of his tract, is excluded: 7 *Watts* 37, 580; 9 *Id.* 77; 4 *W. & S.* 35;

[Ament's Executor v. Wolf.]

1 *State Rep.* 295, 413; 8 *Id.* 507. The principle of Altemus *v.* Long, 4 *State Rep.* 254, is not very easily reconciled; but it is not in conflict on this point. The cultivation and continual occupancy of part of the plaintiff's land, as a farmer, was notice of the adverse claim, sufficient to warn him that the claim and appropriate use extended beyond the mere .fences: and, therefore, he is not deprived of his land by a claim of boundary, the knowledge of which was beyond the reach of ordinary diligence; and herein this case differs from Altemus *v.* Trimble, 9 *State Rep.* 232.

The case which we decide, is, that when a man enters upon, improves, fences, and occupies part of another man's tract of land, and has the boundaries of his claim surveyed and marked, including woodland not enclosed, and for twenty-one years, openly and exclusively uses the woodland as his own, in connection with his improvements, as farmers ordinarily do their woodland, this is not a constructive, but an actual possession of the woodland, and excludes the constructive possession which the law usually attributes to the title, and to the owner's actual possession of the rest of his tract. Judgment reversed and new trial awarded.*

On the second trial, the plaintiff's counsel presented the following point, upon which they requested the court to charge the jury:—That the evidence in the case shows that the tenants of Moorhead entered on the tract of land embraced within his lines in 1816 or 1817, and continued to reside thereon till 1830, when he sold to Ament, and Ament and his heirs have continued the possession since; that under these circumstances the survey made by the owner of the Breast-work tract, and extending his clearing over the line of the Moorhead survey to the extent of five acres, in 1799, and such use of the woodland as he has proved, will not protect him as to any part of the land in dispute, except that which was cleared and cultivated by him for 21 years before suit brought, and the plaintiff is entitled to the residue.

In answer to this point, the court below (BUFFINGTON, P. J.) instructed the jury as follows:—"We decline to instruct the jury as requested in this point, and say to the jury that, if the defendant, or those under whom he claims, entered on the land in dispute under a colorable title, or under the warrant of 31st March 1788, by clearing land amounting to some five acres, and used the residue of the land in dispute for timber, and cut and used it for fencing or other purposes, up to the boundaries of the land in dispute, and used it and occupied it as farmers usually occupy their woodland—and this possession of the clear land and use of the woodland was continued and exclusive for twenty-one years—such possession would give title by the statute of limitations, notwithstanding there was no actual residence on the part in dispute. And it is immaterial whether the

* Justices BLACK and KNOX were not present at the argument.

[Ament's Executor *v.* Wolf.]

timber cut on the land in dispute was used on that land entirely, or partly there and partly on the residue of the land."

The learned judge also, in his general charge, instructed the jury as follows :—" Where there is an actual, notorious, and visible occupancy on the land in dispute by the younger claim, and thus displacing the constructive possession of the elder title, the question is, how far this actual possession extends. Is it confined to the parts actually fenced and cultivated, or does it extend to the limits of the colorable claim ? There being a notorious possession on part, so as to apprise the owner that he was disseised, it becomes then a question as to the extent of the actual possession on the one hand and the disseisin on the other. If the holder of the younger claim takes actual possession of a part of the interference, under a colorable claim to the whole, and does claim to hold and possess the whole, and fences and cultivates a considerable portion, as in this case five or six acres, and occupies and uses the woodland as farmers usually do, by cutting timber for rails, fire-wood, buildings, &c., as needed, and continues thus to use, occupy, and claim for a period of twenty-one years adversely to the owner, the court are of opinion, that this is such an actual possession of the whole, as would displace the constructive possession of the owner, and would be available to protect the occupant under the statute."

To this charge the plaintiff excepted ; and a verdict and judgment having been given for the defendant, the plaintiff sued out this writ, and here assigned the same for error.

*Foster* and *Marchand,* for the plaintiff in error.—In the earlier cases.it was settled, that an intruder could only claim the land actually enclosed and cultivated for twenty-one years, as against the real owner out of possession ; but the statute of limitations has received a more liberal construction by the Supreme Court, and it is well settled now, that the entry of an intruder on unseated land, either with or without colour of title, claiming up to known boundaries, and an actual occupancy of part, and use of the whole for the ordinary purposes of farming, continued for twenty-one years, claiming adversely, will give title to the whole under the statute. Such an occupancy of part gives the intruder the constructive possession of the whole. An entry under colour of title amounts to nothing more than evidence of the extent of his claim, and places him precisely in the situation of an intruder who has marked the boundary of his claim at the time he enters.

These principles properly applied will not now be questioned. The attempt in this case is, to extend the principles before stated to a class of ·cases to which they have never been applied by any adjudged case, and the extension to which, by this court, will announce a principle at once new and startling to the profes-

[Ament's Executor v. Wolf.]

sion. All the cases on this subject, where an intruder has been allowed to hold against the real owner, more than the land actually cleared and enclosed for more than twenty-one years, by constructive possession, have been, where the owner was not in the actual possession of any part of his land. If the owner of the survey, before the expiration of twenty-one years from the time an intruder has such occupancy as will, in the absence of actual possession by the owner, have ousted him, enters, builds, and improves the land, how does the case then stand? If he is in the actual possession of part, he is in the constructive and legal possession and seisin of the whole, and can only be disseised by actual occupancy of an intruder, by clearing and cultivation. It cannot be doubted, that the ground on which an intruder is allowed to hold more than he actually encloses is, that he is said to be in the constructive possession of more, or up to the boundaries to which he claims—in the mean time, the owner takes possession, and the moment he does so, his possession extends to the boundaries of his survey; and here the conflict commences, and the question to be settled is, whether the constructive and legal possession and seisin of the owner will prevail, or give way before the same kind of possession by the intruder: Porter v. McGinnis, 6 W. & S. 502; Hole v. Rittenhouse, 7 Harris 305; Cluggage v. Duncan, 1 S. & R. 111; Hall v. Powel, 4 Id. 462; Potts v. Gilbert, 3 W. C. C. 475; Hull v. Wilson, 1 Jones 513; Altemus v. Long, 4 Barr 254; Wright v. Guier, 9 Watts 172.

Cowan and Coulter, for the defendant in error, cited and relied upon the former decision of the court in this case.

The opinion of the court was delivered by

WOODWARD, J.—We thought the only question in this cause was effectually decided, when it was here before, but the counsel have brought it up again, and have appealed to us very earnestly to reverse our former decision. We have no right to complain of this, for it is no more than the losing party in ejectment has a right to do. Besides, if our former judgment were sound, it will bear to be reviewed, and if it were not sound, it is well for us to have an opportunity to correct it in the very case in which it was pronounced.

It is the case of clashing surveys. The interference is about forty acres. Both parties have been long in the actual possession of their respective surveys, but the junior warrant-holder cleared and cultivated a field of about five acres within the interference, and has had possession of that, and uninterrupted use of the rest of the interference, as woodland adjacent to farms is commonly enjoyed, for more than twenty-one years before suit brought. The question is, whether the statute of limitations will protect him.

That he has acquired a right to so much as he enclosed and culti-
vated, is not denied, but it is denied that he has acquired title to
the woodland.

Judge LOWRIE's opinion, when the case was here before,
adverted to the early decisions in reference to the extent of
intruders' claims under the statute of limitations, and contrasted
them with the later cases, which have more carefully and clearly
defined what is actual occupancy ; and these he declared, do most
certainly decide, that such a use as the defendant made of the
woodland, in connection with his improved land, is actual, and not
constructive possession.

The cases referred to, especially Judge KENNEDY's elaborate
opinion in Thompson *v.* Milford, 7 *Watts* 443, Cresswell *v.* Alte-
mus, *Id.* 580, and Lawrence *v.* Hunter, 9 *Watts* 77, will be found
fully to justify the above conclusion. In Alden *v.* Grove, 6 *Harris*
388, the result of the authorities was stated in these words :—
" Since the cases of Criswell *v.* Altemus, and those which follow in
its wake, it is vain to deny that the intruder's use of woodland, as
woodland is ordinarily used, is, in the eye of the law, actual pos-
session of it, as truly and effectually for the purposes of the
statute of limitations, as his cultivation of fields is actual posses-
sion of them."

This is very definite language, and unless its force is to be
greatly abated, it leads inevitably to the conclusion, that the
enclosed field, on this interference, was no more an actual possession
than the woodland, used as it is admitted it was used. But if the
intruder or younger warrantee had actual possession of the wood-
land of this interference, the elder warrantee was as surely ousted
as it is true that two magnitudes cannot at the same time occupy
the same space. Both could not have actual and adverse posses-
sion at the same time, and since the law has defined such acts as
the younger warrantee exercised over the woodland to be actual
possession, the title, after twenty-one years, must be considered
as divested from the true owner, and transferred to the intruder.

Counsel are not unaware of the strong terms in which such
possession of woodland has been defined, but they say the rule
has been predicated only of unoccupied tracts whereof the right-
ful owner had but the constructive possession, and has never been
applied to the woodland of a tract whereon the owner was actually
resident. I have gone over all the cases in the books, and I
believe this position of counsel to be correctly stated. In every
case in which the customary use of adjacent woodland has been
treated as actual possession, the original owner of the tract has
not had the actual *possessio pedis* of any part of his survey. This
must be admitted, but what of it ? The law draws the possession
of unoccupied lands to the title, and when the courts define what
kind of actual possession is necessary to oust the constructive

[Ament's Executor *v.* Wolf.]

possession of the owner, they are defining, not a fiction, but a fact —an actual, visible, and tangible possession. Nothing short of such a possession shall oust the imaginary possession which the law imputes to the absent owner. But the force of the fact is not affected by the circumstance that he is a non-resident owner, or if affected at all by that circumstance, it lessens it as compared with the force of the same fact, when urged against a resident owner. An entry on the woodland of a non-resident is an act of less direct hostility, than an entry on the woodland of a man who is at hand to repel it. In the one case, it may fairly be presumed he is ignorant of the trespass; in the other, he is defied to his very teeth. When repeated and continued so long as to amount to actual possession as against the non-resident, much more must it be accounted actual possession against him who has a chance to know that his rights are endangered, and, if not asserted in due time, will be lost.

Whilst, therefore, it is true, that this peculiar kind of possession of woodland has been set up in all the adjudged cases, against non-resident owners, it seems to us that it applies *a fortiori* to resident owners. If it is a good defence against a title which may be ignorant of its danger, it is better against a title that knows it is questioned. A rule of law, that should be so administered as to sacrifice the absent, but to protect him who was on the spot to protect himself, would not be remarkable for either wisdom or equity. In the late excellent work of Mr. Price, on Limitations and Liens, at p. 107, the result of a large number of authorities is stated in these words: "In case of interfering surveys, and of actual possession by both parties, of their respective tracts, or parts of them, the law adjudges the possession of the unenclosed part of the interference to be in him who has the best right, and the statute does not operate." This is true, if adjacent woodland, used as farmers ordinarily use such land, be not considered as "unenclosed;" but otherwise, it is not strictly accurate. Where owners of conflicting surveys are both in actual possession within their respective lines, but neither of them within the interference, the law undoubtedly adjudges the possession of the interference to be in him who has the right, and when the other enters upon the interference, he acquires title under the statute to no more than he actually occupies. All beyond his actual occupancy is still in the possession of him who has the right; but here comes back the question—What is actual occupancy? We hold that enclosing and cultivating part of the interference, and using the residue as adjacent woodland is customarily enjoyed, is actual possession of the whole. The possession which the law imputed to the real owner, be it actual or constructive, is ousted by such entry and occupancy, and after the statutory period, the title is changed. The authorities cited by Mr. Price, when taken in con-

[Ament's Executor *v.* Wolf.]

nection with those which define the occupancy of woodland, will not be found inconsistent with this ruling. Undoubtedly, this woodland species of occupancy is of late growth in our law, but that it is well rooted in reason and necessity, was so fully proved by the late Judge KENNEDY, in the cases to which I have referred, that I am under no necessity to enter upon its justification. It has been found a salutary construction of the statute of limitations, and notwithstanding the able argument of counsel, we think this a proper case to which to apply it.

The judgment is accordingly affirmed.

THOMPSON, J., dissented.