210    121
216   ¹208
216   ¹608

210    121
222   ³511

# Titus, Appellant, v. Bindley.

*Title—Disputed title—Real estate—Act of June* 10, 1893, *P. L.* 415—
*Ejectment.*

On a petition under the Act of June 10, 1893, P. L. 415, entitled "An act
to provide for the quieting of titles to land," the court cannot summarily
determine the title to the property on the application for the issue, whether
the dispute is over facts or the law arising upon the construction of a written
instrument.

Whenever the adverse claimant relies upon possession, actual or con-
structive, to oust the jurisdiction of the court under the act, he must es-
tablish it without requiring the court on the application for the issue to
first adjudge and sustain the validity of his title.

Where the petition sufficiently avers the petitioner's claim of title and
right of possession, and the respondent's denial thereof, and the parol
testimony shows that the petitioner and those under whom he claimed title
had exclusive possession of the land for many years, the court should grant
the issue prayed for by the petition.

Argued Oct. 18, 1904. Appeal, No. 152, Oct. T., 1904, by
plaintiff, from order of C. P. Greene Co., Sept. T., 1902, No. 11,
refusing an issue in case of L. C. Titus v. Edwin Bindley et
al. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTRE-
ZAT, POTTER and THOMPSON, JJ. Reversed.

Petition for an issue under the Act of June 10, 1893, P. L.
415. Before CRAWFORD, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the order refusing the issue.

*H. C. Staggers* and *James Inghram*, for appellant.—Time
does not begin to run against a privilege reserved in a deed,
until some default, negligence or acquiescence is shown, or
may be fairly presumed in the party in whose favor such reser-
vation is made: Butz v. Ihrie, 1 Rawle, 218 ; Nitzell v. Pas-
chall, 3 Rawle, 76.

Twenty-one years occupation of land adverse to a right of
way and inconsistent with it, bars the right: Yeakle v. Nace,
2 Wharton, 123 ; Price on Limitations and Liens, 118.

An abandonment by the tenant of demised premises is such
a relinquishment as amounts to an implied surrender, and jus-

tifies an immediate resumption of the possession by the land-lord : McKinney v. Reader, 7 Watts, 123 ; Kiester v. Miller, 25 Pa. 481.

A contract in writing for the sale and purchase of land may be abandoned by the vendee, and when his acts and conduct are relied upon as evidence of abandonment it is a question of fact referable to the jury : Colt v. Selden, 5 Watts, 525 ; Grove v. Donaldson, 15 Pa. 128 ; Read v. Goodyear, 17 S. & R. 350.

An entry upon a tract of land which had been previously appropriated by warrant, survey and patent, a possession for twenty-one years, and the payment of taxes during that time, is a good title to the whole tract : McCall v. Neeley, 3 Watts, 69.


*A. F. Silveus*, with him *Willis F. M'Cook*, for appellee.—A grant of a mine right under which the grantee is authorized to remove and sell for his own benefit all the coal contained in a tract described, is a sale of the coal, and not a lease of it, even though the instrument by which the grant is made be drawn in the form of a lease : Kingsley et al. v. Hillside Coal & Iron Co., 144 Pa. 613 ; Montooth et al. v. Gamble, 123 Pa. 240 ; Lillibridge et al. v. Lackawanna Coal Co., 143 Pa. 293 ; Timlin v. Brown, 158 Pa. 606.

Where an agreement relating to coal or minerals gives the right to mine and remove all the coal, it constitutes a sale of the coal and operates as a severance of the coal from the surface: Sanderson v. City of Scranton, 105 Pa. 469 ; Lehigh, etc., Coal Co. v. Wright, 177 Pa. 387 ; Finnegan v. Stineman, 5 Pa. Superior Ct. 124 ; Hosack v. Crill, 18 Pa. Superior Ct. 90 ; Hosack v. Crill, 204 Pa. 97.

The adverse possession of a mine by the owners of the surface for the statutory period would give title ; but it must be distinct from the possession of the surface. It is unaided by surface rights or occupancy, and the possession must be actual, exclusive, continued, peaceable and hostile : Plummer v. Hillside Coal & Iron Co., 160 Pa. 483 ; Armstrong v. Caldwell, 53 Pa. 284 ; Finnegan v. Stineman, 5 Pa. Superior Ct. 124 ; Del. & Hudson Canal Co. v. Hughes, 183 Pa. 66.

Constructive possession follows the legal title and every owner is presumed to be in possession until ousted by an ac-

tual entry: Kreamer v. Voneida, 24 Pa. Superior Ct. 347; Fallon on Conveyancing, 30; Armstrong v. Caldwell, 53 Pa. 284.

Where a severance has taken place and the owner of the minerals has recorded his deed, he does not lose his right or his possession by any length of nonuser: Armstrong v. Caldwell, 53 Pa. 284; Kingsley et al. v. Hillside Coal & Iron Co., 144 Pa. 613; Bear Valley Coal Co. v. Dewart, 95 Pa. 72.

A statement that the petitioner is in possession is one of the facts required to appear in the petition as a condition precedent to his right to become a petitioner, and is one of the facts which the court shall find to be true upon the hearing of the rule, before it shall become the duty of the court to frame an issue: Delaware and Hudson Canal Co. v. Genet, 169 Pa. 343; Huntzinger v. Helfenstein, 10 Pa. C. C. Rep. 576; Welch's Petition, 29 Pa. C. C. Rep. 161.

OPINION BY MR. JUSTICE MESTREZAT, December 31, 1904:

This is a proceeding under the Act of June 10, 1893, P. L. 415 entitled "An act to provide for the quieting of titles to land" in which the petitioner requested the court below to frame an issue between him and the respondents " to settle and determine their respective rights and title in and to " the coal and other minerals in and underlying a tract of land in Dunkard township, Greene county, of which the petitioner alleges he is the owner in fee. The petitioner avers that he and those under whom he claims title have been in possession of said coal and other minerals and have been mining the coal every year since 1864 without being interrupted in their rights of possession and ownership of the same by anyone; that in 1864 Solomon Elliott, then owner of the premises, demised and leased to Charles S. Seaton and G. W. K. Minor, respondents' predecessors in title, the right of prospecting and searching for coal and other minerals and for salt, oil, carbon and other substances in and upon a tract of land, a part of which is the land above referred to and now owned by the petitioner, but that the search for oil and gas and other minerals under said lease was abandoned in 1878; that since that date the petitioner's right to the coal and other minerals in and underlying said land has not been interrupted or interfered

with by the lessees in said lease or their successors in title or by any other person, "but on the contrary your petitioner has been in the exclusive possession of the said coal and other minerals from that date to the present time." A rule was granted on the respondents to show cause why an issue should not be framed to settle and determine the rights of the parties to the coal and other minerals in dispute. The respondents filed an answer in which they aver that under the terms of the lease of 1864 they are the owners and in possession of the coal, oil, minerals and other substances in and under the petitioner's land and "are advised and believe that they, and those under whom they claim, have been in the peaceable, notorious and public possession of said leasehold estate from the 4th day of June 1864, down to the present time, with deeds on record; and they deny the petitioner's claim of possession, and aver that petitioner has no possession, or right of possession to the aforesaid leasehold estate by their deed or adverse possession." The answer further avers that the petitioner "never owned, and was never in possession of the coal, minerals, oil and other mineral substances, nor of the rights and privileges set out in the deed from Solomon Elliott to Charles S. Seaton and G. W. K. Minor," and denies that the petitioner and those under whom he claims have been mining the coal since 1864 without interruption or objection as alleged in the petition. The respondents, therefore, deny the jurisdiction of the court to frame an issue under the provisions of the act of 1893.

The petitioner took testimony to support the averments of the petition, and the case was heard on the testimony, the petition and the answer. The learned trial judge was of opinion that "upon the facts before us we are obliged to hold that the constructive possession of the coal is in the respondents under the title they have shown here," and for this reason discharged the rule for an issue.

The case was thus determined by the trial judge on the merits of the titles of the respective parties and it has been argued here by counsel of both parties as though an issue had been framed and tried in the court below and this was an appeal from the judgment entered on the verdict. The title and rights of the parties to the minerals in dispute are not involved in this controversy and cannot be determined by an

interlocutory decree on the rule issued in this proceeding. The only question presented for consideration here is the right of the petitioner to have an issue framed under the statute "to settle and determine their (the parties) respective rights and titles in and to said land." We are clearly of opinion that under the facts presented to the trial court, the petitioner's application for an issue should have been granted.

The act of June 10, 1893, provides substantially that when any person shall be in possession of lands, claiming to hold or own possession of the same by any right or title whatsoever, which right or title of possession shall be disputed or denied by any person "and such claim of title and right of possession and the denial thereof" shall be made to appear to the court, an issue shall be framed in such form as the court shall deem proper between the parties "to settle and determine the right and title of the respective parties to said land."

The deed from Elliott to Levi Titus placed in the latter the fee in the tract of land which included the minerals, "subject to such restrictions and leases as are now held on said premises." The title thus vested in Titus gave him, subject to those restrictions, the right of possession which, as we understand, was followed by actual possession in 1870, when he received his deed. This possession was held by Titus until his death and was thereafter continued until the present time in his son, the petitioner, his successor in title to the premises. The respondents do not deny these facts but aver that by virtue of the grant or lease of June 4, 1864, by Elliott to Seaton and Minor, the legal title to the minerals in the land became vested in them and through them in the respondents, which gives the latter the constructive possession of the minerals. For this reason the court held that it had no jurisdiction to award an issue under the act of 1893. But to arrive at this conclusion, the learned judge was compelled to assume the functions of the court and jury on the trial of an issue. Whether the respondents have constructive possession of the minerals necessarily depends upon whether they have title and that is the very question which the statute directs shall be determined by the court and jury on an issue framed for the purpose. The court cannot summarily determine the title to the property on the application for the issue, whether the dispute is over facts

or the law arising upon the construction of a written instrument: Del. & Hudson Canal Co. v. Genet, 169 Pa. 343. If the court is clothed with the authority to determine the validity of the adverse title on the preliminary question as to whether a rule shall be granted or not, there would be no occasion for an issue in any case. Whenever the adverse claimant relies upon possession, actual or constructive, to oust the jurisdiction of the court under this act, he must establish it without requiring the court on the application for the issue to first adjudge and sustain the validity of his title.

The petition in this case sufficiently avers, as required by the statute, the petitioner's claim of title and right of possession and the respondents' denial thereof. Under the pleadings and facts presented, the court should, and doubtless would, have found these jurisdictional averments to be true. The decision of the case, however, turned on the question of petitioner's possession which, as we have seen, the trial judge held to be constructively in the respondents under the lease of 1864, and for that reason denied the jurisdiction of the court to award an issue. This ruling ignored the parol testimony on the subject of the actual possession of the minerals in dispute. In the opinion, the court says: " The evidence submitted fails to disclose such facts as would amount to actual notice of an adverse holding of the coal since drilling operations were discontinued on the land in 1878 or thereabouts. The taking of coal from veins already opened at irregular periods for domestic use or even for the purpose of sale has been held insufficient to amount to notice of adverse holding even where it is possible for the statute to run under a hostile entry upon land." The learned judge misconceived the purpose of the testimony which he thought was offered to establish title by an adverse tenure. That question, as we have attempted to show, could not be determined on the application for an issue. The testimony was competent and relevant, however, for the purpose of establishing the jurisdictional fact that the petitioner was in possession of the coal and other minerals claimed by the respondents and the title to which is in dispute between the parties.

We have read and carefully considered the testimony of the witnesses, all of whom were called by the petitioner. This

testimony, if credible, shows that the petitioner and those under whom he claims title have had exclusive possession of the minerals in dispute, except at the intervals during which the lessees and their grantees operated for oil under the lease of 1864 until the operations ceased in 1878 or 1879. This is the concurrent testimony of all the witnesses. Without referring in detail to the testimony, it shows that after the execution of the lease the lessees began operations for oil, which were continued at intervals till about 1879, when the owners of the lease removed their machinery and abandoned the leased territory. The Pittsburg or River vein of coal outcropped on the land and during the period of the oil operations one opening was made into it and coal was mined and removed by the lessees and used in operating the machinery at the oil wells being drilled by them. But during the same period the coal was also mined and removed from the same opening by the owner of the land and he " was using it for himself and delivering some to oil wells in that country at that time." With the exceptions noted, the uncontradicted testimony shows that the holders of the lease never exercised any acts of ownership over the land or the minerals in the land now owned by the petitioner. It further appears that since the abandonment of the leased territory by the lessees in 1879, Elliott's successors in title have claimed the minerals in the land and have " off and on " mined and removed the coal from the opening made during the oil operations. The minerals were never assessed separately, but the land was assessed as an entirety to the petitioner and his predecessors in title and the taxes were paid by them.

We are therefore of opinion that the testimony, taken in connection with the fact that the petitioner is the owner of the whole body of land except such rights therein as the respondents acquired under the lease of 1864, is sufficient to show such possession of the property in dispute as will confer jurisdiction on the court under the act of June 10, 1893. Regarding the testimony as verity, there was no actual possession taken of any of the minerals in the land by the holders of the lease of 1864, except such as resulted from drilling for oil on the premises. The only other act which tends to show a claim of title and actual possession of the minerals by the lessees was

the mining of coal during the oil operations.   But in considering this fact as bearing on the question of possession and, possibly, title, it must be observed that the lease itself confers this authority on the lessees by providing that they shall have "the free use of as much wood and coal as may be required to operate the machinery in sinking or pumping any and all wells that may be sunk by the said parties (Seaton and Minor), their heirs, etc."

We express no opinion on the merits of the title of either party or on the questions suggested by the pleadings and for the consideration of the court and jury on the trial of the issue.   We only decide that on the facts disclosed in the court below an issue should have been framed as prayed for in the petition to determine the titles of the parties to the minerals in dispute.

The order discharging the rule and refusing an issue is reversed, and it is now ordered and decreed that the court below frame an issue as provided by the statute to settle and determine the titles of the respective parties to the coal and other minerals in and underlying the land described in the petition.   The costs of this appeal to be paid by the appellees.