Miners Savings Bank of Pittston *v.* Tracy et ux.
(Toole, Appellant).

Argued April 13, 1937.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. L. Pace,* for appellant.

*John T. Mulhall,* with him *M. J. Mulhall,* for appellee.

OPINION BY MR. JUSTICE LINN, May 17, 1937:

Plaintiff bank, having judgment against Martin M.
Tracy and his wife, Agnes C. Tracy, in a proceeding to
collect on their bond and mortgage to the bank, issued
execution and on a writ of fi. fa. caused two parcels of
real estate in the City of Pittston to be sold and became
the purchaser at the sheriff's sale.   Only one of them was
subject to the lien of the mortgage, and, as to that, no
question is raised.   The other property, number 55
Church Street, is the subject of this suit.   It was not
included in the bank's mortgage but became subject to
the lien of the judgment on the bond which was entered
April 12, 1932.   Delivery of possession of 55 Church
Street to the bank as purchaser at the sheriff's sale was
refused, whereupon it filed this petition, pursuant to the
Act of April 20, 1905, P. L. 239,* 12 PS section 2571

---

\* The title to the act is "An Act Providing for and defining the
rights, remedies, duties, and liabilities of purchasers of real estate
at judicial sales, and of their grantees, heirs and devisees, and of
the persons then in possession thereof."

et seq., for a citation to Mr. and Mrs. Tracy command-
ing them to show cause why possession should not be
delivered. The citation issued and a return was filed
showing service on Mr. and Mrs. Tracy and that the
writ server "also served the within citation and petition
at the same time on Catherine Toole found in possession
of said real estate, by leaving with Martin M. Tracy, an
adult member of her family, at her residence 55 Church
Street, Pittston, Pa. an exact copy of each."

The Tracys and Mrs. Toole filed a joint answer. They
admitted the judgment and execution, but averred, inter
alia, that what was sold by the sheriff and bought by pe-
titioner was merely the interest of the Tracys and not
the interest of Mrs. Toole; that formal notice to peti-
tioner was given at and prior to the sale, that "Catherine
Toole was the owner of the real estate described in said
citation and petition and that Agnes C. Tracy and her
husband, Martin M. Tracy, or either of them, had no
estate or interest therein." They averred that by deed
dated October 8, 1931, Mr. and Mrs. Tracy conveyed the
property to Mrs. Toole in fee for value and that the deed
was recorded May 24, 1935, and that the petitioner had
knowledge of the conveyance at the time of and prior to
the sheriff's sale, and that, while Mrs. Toole and the
Tracys lived together in the house, the Tracys were
"members of Catherine Toole's household." Respond-
ents demanded a jury trial under section 5 of the Act:
*Knecht v. Reichard,* 60 Pa. Superior Ct. 273, 277. Is-
sue was joined and the case came on for trial. The
learned trial judge directed a verdict for the defendant
Catherine Toole. Plaintiff's motion for judgment n. o. v.
was granted and Mrs. Toole has appealed.

There is no dispute of fact. Mrs. Toole was a very old
lady; Mrs. Tracy was her daughter; they lived in the
same house. On October 8, 1931, the Tracys conveyed
the premises to Mrs. Toole who testified: "Q. Mrs.
Toole, how much did you pay for the property at 55
Church Street on October the 8th, 1931? A. Fifty-five

hundred. Q. Whom did you pay that fifty-five hundred dollars to? A. I paid it to my daughter. Q. Do you have the receipts? (Book produced). The Court: How old is Mrs. Toole? Mrs. Tracy: Over eighty. By the Court: Q. Do you remember, Mrs. Toole, all these transactions? A. Yes, I remember them. Q. Where do you live? A. I live right in Pittston there, 55 Church Street. Q. You live in what house? A. Mr. Tracy's house. Q. With your daughter? A. Yes. Q. You and your daughter—A. Yes. Q. —live with Mr. Tracy? A. Mr. Tracy and his family. Q. That is, your grandchildren? A. Yes. Q. Whose house is it? A. It is my daughter's house, ain't it? Q. It is your daughter's house. Is it your house? A. My house; I got it. Q. What? A. I got it. Q. When did you get it? A. I forget now. Q. You forget? A. Yes. The Court: I think you better prove that some other way."

Mrs. Tracy testified and produced receipts showing that beginning with December 3, 1925, to October 5, 1931, she had received from her mother various sums of money aggregating, as she said, "close on to fifty-five" hundred dollars. She was asked "Q. You borrowed that money from your mother? A. Well, my mother sort of loaned it to me. Q. Did she lend it to you or give it to you? A. She didn't give it to me. The property was the consideration. Q. So you and your husband deeded the property? A. Yes. . . ."

When the judgment was entered and became a lien, the record title was in the Tracys. Their deed to Mrs. Toole (though dated October 8, 1931) was not recorded until May 24, 1935, four days after the writ of fi. fa. issued; the sheriff's sale was held June 14, 1935.

The majority of the judges of the learned court below were of opinion that Mrs. Toole's delay in recording her deed rendered it void as to subsequent judgment creditors, such as plaintiff, under the Recording Act of May 12, 1925, P. L. 613, as amended June 12, 1931, P. L. 558,

21 PS section 351. The dissenting judges were of opinion, as they said, that "This is not such a bona fide judgment creditor as was contemplated by the statute, since the mother was in possession, lived in the home, even though her daughter, the grantor, lived with her. The joint possession misled no bona fide creditor. This possession, and the facts and circumstances surrounding it, we deem, was sufficient notice to one who seeks execution, not as a subsequent or misled judgment creditor, but one seeking to collect a deficiency which, according to the evidence, did not exist."

Assuming that the conveyance was valid as between grantors and grantee, her failure to record her deed left it in the power of the grantors, holders of the record title, apparently to deal with the property as their own even to the length of making a valid bona fide conveyance to another without notice of the prior deed; that is, they might divest the title theretofore granted to Mrs. Tracy's mother. Having that general power the grantors might exercise it in part by mortgaging or, as they did here, by subjecting the property to the lien of their debts, which is only a method of preparing the way to divest by judicial sale the title of the grantee granted by the unrecorded deed. And the possibility of such action by the grantor the statute recognizes. It provides "That all deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be ad-

judged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, [or] mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages." (Act of May 12, 1925, P. L. 613, as amended by Act of June 12, 1931, P. L. 558, 12 PS section 351.) Or, briefly, the unrecorded deed shall be deemed "void as to any subsequent bona fide . . . holder of any judgment, duly entered in the prothonotary's office . . . without actual or constructive notice unless such deed . . . shall be recorded, as aforesaid, before . . . the entry of the judgment under which such subsequent purchaser . . . or judgment creditor shall claim."

It is clear that on April 12, 1932, when the judgment was entered, the record title was in Mr. and Mrs. Tracy and that, as to third persons they could divest the estate granted by the unrecorded deed to Mrs. Toole, either by making another conveyance to a bona fide purchaser or by suffering the property to become subject to liens for their debts in favor of a bona fide creditor without notice. The good faith of the lien creditor must be determined as of that date; if the lien is then valid, it does not become invalid by the judgment creditor's discovery at a later date of some fact which would have prevented priority had actual or constructive notice of it existed before the lien attached. The plaintiff is therefore unaffected by the fact that shortly before the sheriff's sale, Mrs. Toole's deed was recorded and that notice was given at the sheriff's sale. See *Uhler v. Hutchinson,* 23 Pa.

110; *Calder v. Chapman,* 52 Pa. 359; *Lefever v. Armstrong,* 15 Pa. Superior Ct. 565.

As the recording of her deed in 1935 does not help appellant, we are confronted by the fact that she lived at 55 Church Street. She testified that she lived with her daughter and her daughter's family. The case then comes to this; that when the judgment became a lien the premises were occupied by the record title holders, Mr. and Mrs. Tracy, their children, and by Mrs. Tracy's mother. Of what facts should the plaintiff have been advised by that showing? The answer is supplied in part by the statute and in part by our decisions. The rule was thus stated in *Smith v. Miller,* 296 Pa. 340, 344, 145 A. 901, in which it appeared that parents and their son (who conveyed to his mother by a deed not recorded) resided on the premises: "When Frank C. Miller conveyed the property to defendants' predecessor in title, both parties were living in it and both continued to reside there. By failing to record the deed, the record title remained in Frank C. Miller. Hence, when it was sold at sheriff's sale as his, the record title and actual possession were in the same person, and there was no constructive notice of a different ownership by reason of the fact that his mother, the grantee in the unrecorded deed, was also living in the property. We said in *Salvation Army, Inc., Trustees, v. Lawson,* 293 Pa. 459, 463: 'There can be no doubt whatever of the proposition that where the land is occupied by two persons, as, for instance, by husband and wife, and there is a recorded title in one of them, such joint occupation is not notice of an unrecorded title in the other. . . . The rule is universal that if the possession be consistent with the recorded title, it is no notice of an unrecorded title.' Many cases so held, but it is sufficient to refer to *Stewart v. Freeman,* 22 Pa. 120, 123; *Townsend v. Little,* 109 U. S. 504; *Kirby v. Tallmadge,* 160 U. S. 379, 388; *Rankin v. Coar,* 46 N. J. Eq. 566, 22 A. 177. Indeed, this conclusion is but an application of the general principle

that, in the absence of proof to the contrary, actual possession is presumed to be in him who has the record title. It would be intolerable to require an intending purchaser or encumbrancer to ask every person living in a property, be they many or few, whether or not he has a better title than the record owner, who is also in possession. This would be to shift the burden of clear proof of notice from him whose neglect to record his deed has caused the trouble, to him who has been guilty of no neglect; and would reverse the rule that the possesion of one holding under an unrecorded deed, in order to be effective as against a subsequent purchaser, must be open, notorious, distinct and unequivocal: *Rankin v. Coar,* supra." See also *Buck's Appeal,* 100 Pa. 109; *Harris v. McIntyre,* 118 Ill. 275, 8 N. E. 182; *Atwood v. Bearss,* 47 Mich. 72, 10 N. W. 112.

The presumption is of course rebuttable but in this case there is nothing to rebut it; appellant's evidence supports the facts bringing the case directly within the statute. It is suggested in the argument on her behalf that a "subsequent bona fide . . . holder of any judgment, duly entered in the Prothonotary's office . . ." means one who "acquires his rights as a creditor after the execution of the belated deed, and not one, as in instant case, whose rights as such were acquired on August 2, 1926, more than five years before the date and delivery of said belated deed on October 8, 1931," that "The purpose of . . . [the] . . . recording acts was to protect those who subsequent to the execution or delivery of the unrecorded deed would give credit on the faith of the property." We can find nothing in the statute to support the suggested construction. Appellant also contends that the act is unconstitutional on the ground that the subject is not clearly expressed in the title; we think this point does not merit discussion. It is also suggested, perhaps as an afterthought because it is inconsistent with the position taken in the answer, that Mrs. Toole's title can only be attacked by "eject-

ment at the instance of purchaser at Sheriff's Sale, or by a proceeding in equity under section 9 of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045-1047." Appellant availed herself of the jury trial allowed by section 5 of the Act of 1905 which furnishes an adequate remedy: *Knecht v. Reichard,* 60 Pa. Superior Ct. 273, 277; *M. G. B. & L. Assn. v. Wilcox,* 273 Pa. 385, 117 A. 89; as she claimed through the Tracys whose rights were extinguished by the sale, the case is within the statute. She also complains that she was not permitted to show an oral agreement that execution should be restricted to the mortgaged land; this was properly excluded: *Gianni v. Russell,* 281 Pa. 320, 126 A. 791; *Fields v. Sipe & Co.,* 319 Pa. 448, 181 A. 377.

Judgment affirmed.