## Coyle Lumber Co., Inc., v. Heberlig et al.

*Tom O. Bietsch,* for plaintiff.
*Landis & McIntosh,* for defendants.

WRIGHT, P. J., fifty-seventh judicial district, specially presiding, March 15, 1950.—Defendants, the Heberligs, owned a number of lots, including nos. 9 and 11 and 12, in a development known as Valley View. They were engaged in building and selling dwellings, and were indebted for materials to plaintiff, Coyle Lumber Co., Inc., hereinafter referred to as Coyle, and to intervenor, J. P. Bixler & Sons, Inc., hereinafter referred to as Bixler.

On December 1, 1948, Heberligs gave Coyle a note on which judgment was entered on same date to the above number and term. The Heberligs had previously sold lot 11 but still owned, inter alia, lots 9 and 12. On March 23, 1949, Coyle released the lien of its judgment against all of Heberligs' land except lots 9 and 11. On May 28, 1949, the Heberligs gave Bixler a note on which judgment was entered on June 2, 1949. It was subsequently discovered that there was a mistake in the release of lien in that the lots excepted therefrom should have been 9 and 12 instead of 9 and 11. Coyle has obtained the present rule on Heberligs and Bixler to show cause why the release of lien should not be corrected. At the time its note was entered,

Bixler did not know of the mistake. Admittedly it did not place reliance upon the then state of the record.

Should a judgment creditor be permitted to correct a release of lien entered by mistake to the prejudice of an innocent creditor who subsequently entered judgment while the erroneous release stood uncorrected on the record? Counsel assert that this is a question of first impression. It has been argued at length and extensively briefed. We are entirely clear that the question must be answered in the negative, whether or not the subsequent creditor relied on the state of the record at the time of entry.

We do not perceive that the Act of May 12, 1925, P. L. 613, as amended by the Act of June 12, 1931, P. L. 558 (commonly known as the Recording Act), applies to this situation, except to evidence a legislative policy to place judgment creditors on the same plane as purchasers and mortgagees. Incidentally, it is not necessary in order to come within the protection of the act to have given credit on the faith of the property: Miners Savings Bank of Pittston v. Tracy et ux., 326 Pa. 367, 374. And in a case turning upon the construction of the Act of June 4, 1901, P. L. 425, voiding resulting trusts as to bona fide judgment creditors, it was held unnecessary for the judgment creditor to have relied upon the record title: The Central National Bank and Trust Co. v. Kuntz, 106 Pa. Superior Ct. 143, 147.

Plaintiff stresses the case of McCune v. McCune, 164 Pa. 611, which involved distribution of a fund raised by sheriff's sale. While one sentence in that opinion might seem to support its position, earlier language indicates that protection should be afforded to an intervening right acquired by the entry of a judgment while prior judgments appeared on the record to be satisfied. Our reasoning is supported by a

number of other cases, of which we will mention only a few.

In Zimmerman v. Briggans, 5 Watts 186, a judgment was entered by mistake against John instead of Jacob Briggans. Correction was permitted, but not to the prejudice of subsequent lien creditors. In Smith v. Hood & Co., 25 Pa. 218, it was held that a mistake in the amount of a judgment could be corrected, but not to affect the rights of third persons. Similarly in Peirce v. Black, 105 Pa. 342, it was held that parties to a judgment may change its purposes, but not to adversely affect the rights of a subsequent lien creditor.

In Hutchinson's Appeal, 92 Pa. 186, in which an incorrectly entered judgment was postponed, the court said:

"There can be no distinction between purchasers and subsequent judgment-creditors. The latter must be presumed to have searched for prior liens before giving credit to the defendant, and *whether they did or not,* the rule which requires the judgment-index to give accurate information cannot be departed from without great danger". (Italics supplied.)

In Citizens National Bank & Trust Company of Lehighton v. First National Bank of Lehighton, 20 D. & C. 349, holding that the judgment index should determine the order of priority, Judge Reno ruled that a subsequent lien creditor should be preferred without the necessity of showing reliance upon the state of the record. A contrary ruling, it seems to us, would tend to penalize a litigant for divulging the truth.

Plaintiff is seeking relief, not from the effect of fraud, but from the effect of its own mistake. It was not a mutual mistake so far as Bixler was concerned. Relief will be afforded where an encumbrance has been discharged by mistake only if rights of third parties have not intervened: St. Clement's B. & L. Assn. v. McCann et ux., 126 Pa. Superior Ct. 20, 22. This is a

fit occasion to apply the equitable rule that the negligent one of two innocent parties must bear the loss: Ridgway, Budd & Co.'s Appeal, 15 Pa. 177, 182.

It appears by stipulation of counsel that lot 12 has been sold and that the proceeds are being held in escrow pending our decision. We will therefore not attempt to formulate a conditional decree, but will discharge the rule entirely.

*Decree*

Now, March 15, 1950, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the rule be discharged at the cost of petitioner.