**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**


**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**


| | | |
|---|---|---|
| JACK DUNCAN AND JEFFREY DUNCAN, | : | No. 8 WAP 2024 |
| | : | |
| Appellees | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 5, 2023, at No. 402 WDA 2022, |
| v. | : | affirming the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered March 7, 2022, at No. GD- |
| CHARTIERS NATURE CONSERVANCY, | : | 18-1327. |
| INC., | : | |
| | : | ARGUED: April 9, 2025 |
| Appellant | : | |


## OPINION


**JUSTICE McCAFFERY**                         **DECIDED: DECEMBER 15, 2025**

In this discretionary appeal, we consider the jurisdictional question of possession of real property required to maintain a quiet title action under the Pennsylvania Rules of Civil Procedure. In particular, we address the weight given to the record title owner's presumption of possession and the relevance of the property's description as unenclosed woodlands. We hold that while a record title owner enjoys a presumption of possession, a party seeking to quiet title may overcome that presumption by presenting evidence that it has exerted dominion and control over the property. If the trial court finds such evidence credible, it should direct the title owner to file an action in ejectment to preserve its claim. Moreover, the fact that the property at issue may constitute woodlands — which requires a stricter standard to demonstrate possession — is not relevant for this preliminary question.

## I. Quiet Title & Ejectment Actions:

Land disputes in this Commonwealth are nothing new. In the early part of the twentieth century, four separate statutes governed contests between parties seeking clear title to real property. *See* 4 Goodrich-Amram 2d § 1061(b):6. Each statute applied to a different factual circumstance: (1) the Act of 1889, as amended in 1903, applied when a plaintiff was in "undisputed possession" of the property and the defendant was out of possession; (2) the Act of 1893 applied when both parties claimed to be in possession of the property; (3) the Act of 1879, as amended in 1885, applied when the plaintiff was in possession of property purchased by a third party at a judicial sale; and (4) the Act of 1905 applied when the plaintiff was in possession of the property, the "outside claimant has been out of possession for 21 years[,] and the outside claimant's whereabouts were unknown." *Id.* (footnotes and citations omitted).

In 1947, this Court promulgated Pennsylvania Rule of Civil Procedure 1061 to unite, into one procedure, these sundry methods to litigate clouds on title. *See White v. Young*, 186 A.2d 919, 921 (Pa. 1963) (citation omitted). Rule 1061(b) provides that a quiet title action may be brought in the following circumstances:

(1) to compel an adverse party to commence an action of ejectment;

(2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;

(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; or

(4) to obtain possession of land sold at a judicial or tax sale.

Pa.R.C.P. 1061(b)(1)-(4). Shortly after the Rule's enactment, this Court described a Rule 1061 quiet title action as a "new form of action, created as a consolidation of a large number of independent actions and proceedings, mostly statutory, designed to remove

clouds on title, [and] adjudicate title disputes where ejectment will not lie[.]" *Brennan v. Shore Bros.*, 110 A.2d 401, 403 (Pa. 1955) (citation omitted).

Significantly, an ejectment action lies only when a purported property owner is "out of possession" but has "a present right to immediate possession." *Brennan*, 110 A.2d at 402 (citation omitted). Conversely, a quiet title action is appropriate when "a party in possession" of property seeks to "test his title as against an adverse claimant[,]" which may be the record title owner. *Mildren v. Nye*, 87 A. 607, 608 (Pa. 1913). In each action, the plaintiff is different. A party who holds title to property, but is not in possession, must bring an action in ejectment to force the possessor from the premises. However, a party in possession of property, who does **not** hold record title, must bring an action to quiet title under Rule 1061(b)(1) to compel the title holder to file an ejectment action or be forever barred from doing so. Thus, in order to bring a Rule 1061(b)(1) quiet title action, a party must prove, as "a jurisdictional prerequisite," that they are in possession of the property. *Siskos v. Britz*, 790 A.2d 1000, 1007 (Pa. 2002). It is this preliminary, jurisdictional question of possession that underlies this appeal.[1]

---

[1] This Court has consistently referred to this preliminary question of possession as a "jurisdictional prerequisite." *Siskos*, 790 A.2d at 1007. *See also Titus v. Bindley*, 59 A. 694, 696 (Pa. 1904) (referring to possession as a "jurisdictional fact" that must be established in order for a plaintiff to quiet title); *Mildren*, 87 A. at 608 (possession of the real property by a plaintiff seeking to quiet title is "a jurisdictional fact") (citation omitted). However, it may be more appropriately characterized as a question of standing.

"Jurisdiction relates solely to the competency of the particular court … to determine controversies of the general class to which the case then presented for its consideration belongs." *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 399 (Pa. 2021) (citation omitted). Conversely, "the doctrine of standing 'stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract[,]'" and requires that a plaintiff have a "substantial, direct, and immediate" interest in the outcome of the litigation. *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021) (citations omitted).

There is no real dispute that courts of common pleas are competent to litigate property disputes. Thus, there appears to be no real question of subject matter (continued…)

With this background in mind, we turn to the facts of the current dispute.

## II. Facts & Procedural History

This matter concerns two parcels of undeveloped land in Crafton Borough, Allegheny County near Chartiers Creek — Lot 105-M-202 (the Artinger Lot) and Lot 105-M-198 (the PNC Lot). The parcels are located on either side of an undedicated street, but not directly across from each other. Chartiers Nature Conservancy, Inc. (the Conservancy) is the record title owner of both lots. The Conservancy is a nonprofit corporation that seeks to "acquire property in its natural state to preserve the property and … hold it open to public use." N.T., 10/13/2021, at 9.

In April of 2016, the owners of the Artinger Lot donated the parcel to the Conservancy for a nominal fee. The Conservancy had acquired the PNC Lot 16 years earlier, in May of 2000, *via* a quit claim deed. Both parcels abut land owned by Jack Duncan and Jeffrey Duncan (collectively, the Duncans).[2] The Duncans have operated an excavation and topsoil business, Duncan Excavating, on their land for more than 40 years.

In January of 2018, the Duncans initiated a quiet title action to acquire, by adverse possession, two parcels of land purportedly owned by the Conservancy. Following litigation of preliminary objections, which revealed the Duncans had misidentified one

---

jurisdiction. Rather, what is at issue here is whether the plaintiffs can demonstrate a "substantial, direct, and immediate" interest in the action by proof that they currently have possession of the property for which they claim title. *Firearm Owners Against Crime*, 261 A.3d at 481. Indeed, unless the plaintiffs have a legitimate basis to quiet title, they cannot maintain a quiet title action under Rule 1061(b)(1). However, regardless of this potential misnomer, this issue was not raised or briefed by the parties, and does not affect our ultimate disposition; thus, we will continue to refer to the question of possession as a jurisdictional prerequisite.

[2] Jack Duncan is Jeffrey Duncan's father. *See* N.T., 10/13/2021, at 92, 104.

parcel, the Duncans filed a second amended complaint on January 2, 2020. They averred that since 1977, they "have been in open, notorious, exclusive, continuous, uninterrupted adverse possession" of the Artinger and PNC Lots, and have used both properties exclusively "to work on the sorting, blending, storing and shredding of soil and gravel into fill material and [the] stor[age of] tools and equipment." Second Amended Complaint, 1/2/2020, at ¶¶ 9, 11. The Conservancy filed another set of preliminary objections, asserting that the Duncans could not bring a quiet title action because they were not "in legal possession" of the parcels. Preliminary Objections, 1/14/2020, at ¶ 12.

The trial court conducted an evidentiary hearing on October 12, 2021, to determine the threshold jurisdictional issue of possession. The Conservancy presented testimony from its corporate secretary, Vincent Coppola, Esq., who stated he had been affiliated with the organization since 1988 and was personally responsible for the acquisition of the Artinger Lot. He testified the Conservancy held the deeds to both parcels, and the land has remained undeveloped for many years. In support of this claim, Coppola presented a series of Google Earth[3] aerial photographs, taken from 1993 through 2020. Coppola also presented five recent photographs of the properties he had taken himself. He testified the photos depicted that the parcels remained in their untouched "natural state" until 2018, when the Duncans denuded the PNC Lot and stripped it of all vegetation. N.T., 10/13/2021, at 27, 38. According to Coppola, this action taken by the Duncans corresponded with their filing of the present quiet title action.

The Duncans' attorney questioned Coppola about a trespass action the Conservancy filed against the Duncans in 2002. Although Coppola initially testified that action "did not involve the lots … that are at issue" in this matter, he later acknowledged

---

[3] Google Earth is a "mapping service [that] allows users to call up … detailed satellite images of most locations on Earth." https://www.britannica.com/topic/Google-Earth (last accessed 12/11/2025).

the 2002 trespass complaint alleged that the Duncans had "obliterated a large block of natural vegetation including some small trees" on the PNC Lot, which they "refused to restore[.]" N.T., 10/13/2021, at 14, 63. Coppola insisted, however, the "main component" of that lawsuit was the Duncans' use of a "paper street" that was never dedicated to the Borough. *Id.* at 14, 79. Nevertheless, Coppola admitted that the Duncans defended the trespass action by asserting that they had acquired the property by adverse possession, and the Conservancy never sought to quiet title or eject the Duncans after they made that claim. *See id.* at 64-68. The matter was ultimately dismissed without prejudice by mutual consent of the parties. *See Chartiers Nature Conservancy v. Duncan*, GD-02-018270, Order, 8/24/2011.

The Duncans presented three witnesses — Jack Duncan, Jeffrey Duncan, and Eugene Dudjak. Jack Duncan testified his company has consistently excavated topsoil from the disputed parcels and stored equipment there since 1976. *See* N.T., 10/13/2021, at 99, 101-102. Jeffrey Duncan claimed he never knew the property consisted of separate lots. *See id.* at 138. Rather, he stated the Duncans used the entire area for "[s]torage, staging, mixing, [and] grinding" for their topsoil business. *Id.* at 141. Jeffrey also explained the PNC Lot, in particular, operated as a staging area because it had "always been somewhat of a higher ground[.]" *Id.* at 144.

Jeffrey further testified that "[t]here are gates at every entrance" to the properties, four in total, which he designated as the Duncans' gate, Mike Suehr's[4] gate, the Borough's gate and the ball field gate.[5] N.T., 10/13/2021, at 139-140. He stated that Suehr and the

---

[4] Mike Suehr was the owner of the property the Duncans misidentified in their original complaint. That parcel, Lot 105-M-185, abuts the Duncans' property but neither of the Conservancy's Lots at issue.

[5] The Duncans' attorney asked Jeffrey to "mark" the location of each gate on an aerial photograph of the area, *i.e.*, Plaintiff's Exhibit G. N.T., 10/13/2021, at 139. While that (continued…)

Borough own their gates, but the Duncans own the two gates "at both ends of the property [—] the ball field end and the entrance towards the Borough maintenance facility." *Id.* at 154. Jeffery testified that the gates "have been up" for 30 years, and are controlled by a combination code, of which only a limited number of people have access. *Id.* at 140. One of those with gate access is plumber Eugene Dudjak. Dudjak testified that, since 1999, the Duncans have permitted him to store his trailers and equipment on the property. He identified both the Artinger and PNC Lots as areas where he would unload and store equipment and trailers. *See id.* at 120-121. Dudjak stated he was "under the assumption that the Duncans owned [that] whole area." *Id.* at 132.

At the conclusion of the hearing, the court provided both parties the opportunity to file a post-hearing brief. In its brief, the Conservancy insisted the photographic evidence it presented demonstrated that "whatever commercial operations the Duncans performed in the riparian floodplain they shared with the Conservancy did **not** occur on Conservancy lands." Conservancy's Post Hearing Brief, 11/16/2021, at 5 (emphasis added). Additionally, for the first time, the Conservancy argued the Lots at issue were "unenclosed woodlands," and therefore, to prove possession, the Duncans were required to demonstrate they either enclosed and cultivated the properties or established a residence there. *Id.* at 9-11. In response, the Duncans insisted the Conservancy failed to rebut their evidence establishing they have been in possession of the Lots since the 1970s. *See* Duncans' Post Hearing Brief, 12/3/2021, at 3-4, 7 (unpaginated). They also asserted that the Conservancy's averments in the 2002 trespass action — claiming the Duncans had destroyed vegetation on the PNC Lot — constituted a judicial admission that the Duncans **did** operate their business on the Conservancy's land, contrary to its present

___

exhibit is part of the electronic record, the black and white photograph contains no visible markings denoting the location of the gates.

claim that the Lots have remained in the same unaltered condition since the Conservancy purchased them.

On March 7, 2022, the trial court entered an order directing the Conservancy to file an ejectment action within 60 days. In its accompanying opinion, the court cited the existence of the locked gates as "compelling" evidence that "despite the Conservancy's ownership, the public cannot readily access the area, and that the Duncans strictly control access to a limited number of persons." Trial Court Opinion, 3/7/2022, at 4. The court opined that when possession of a property is shared or less than clear, "the remedy is an action in ejectment." *Id.* at 6. Thus, because the court determined "possession [of the properties was] less than clear or … shared by the parties[,]" and the Duncans were "in possession of at least a portion of both parcels[,]" the Conservancy was required to file an action in ejectment pursuant to Rule 1061(b)(1). *Id.* The Conservancy filed a timely appeal.

The Superior Court affirmed in a unanimous, unpublished decision. *See Duncan v. Chartiers Nature Conservancy, Inc.*, 305 A.3d 963 (Pa. Super. Sep. 5, 2023) (unpub. memo. at *1).

Prior to considering the merits of the Conservancy's claims, the Court rejected the Duncans' assertion that the trial court's March 7th order was interlocutory and not appealable as of right. *See Duncan*, 305 A.3d at *1 n.1. Rather, relying on its prior decision in *Seven Springs Farm, Inc. v. King*, 344 A.2d 641 (Pa. Super. 1975), the panel opined that "an order compelling a defendant to bring an action of ejectment or be forever barred from asserting any right, lien, title or interest inconsistent is a final order, as to those proceedings, from which an appeal lies." *Id.* (internal quotations omitted) (*citing Seven Springs Farm*, 344 A.2d at 643 n.4).

Next, the Superior Court addressed the Duncans' claim that they satisfied the jurisdictional prerequisite of possession for a quiet title action merely by pleading such facts in their complaint. *See Duncan*, 305 A.3d at *3. Relying upon Rule 1061 and this Court's decision in *Siskos*, *supra*, the Superior Court explained that "[jurisdictional] possession is required to be established after a hearing where the parties present evidence as to whether the plaintiff is in possession" — which is exactly what occurred in this case. *Duncan*, 305 A.3d at *4.

Turning to the Conservancy's appeal, the Superior Court first considered whether the trial court should have applied the "more technical" definition of possession that applies to "[un]enclosed woodlands." *Duncan*, 305 A.3d at *4. It explained that possession of woodlands requires more than "dominion over property[;]" instead "actual possession of woodlands requires proof that a claimant actually occupied the land or engaged in some active use of the land." *Id.* Thus, the Conservancy argued the trial court applied the wrong test when it found the Duncans had possession of the woodlands. The Superior Court disagreed, concluding that the preliminary question of possession "determines the form of the action and the relief that can be granted." *Id.* at *5. Whether the property is woodlands is relevant to a later adverse possession claim. *See id.* Thus, it found the trial court applied the correct standard.

Lastly, the Superior Court addressed the Conservancy's contention that it was entitled to a presumption of possession as record title owner. As such, the Conservancy argued the trial court's determination that possession was "less than clear" or shared by the parties was insufficient to overcome that presumption. *Duncan*, 305 A.3d at *5 (citation omitted). However, the Superior Court characterized the Conservancy's claim as a request to reweigh the evidence presented in its favor — which the Court refused to do. *See id.* Moreover, the Superior Court explained that the merits of the Duncans'

adverse possession claim have not been decided, and the trial court may make new factual findings following a full hearing. *See id.* Thus, it affirmed the order on appeal.

## III. Issues

The Conservancy petitioned this Court for allowance of appeal, which we granted for the following issues:

(1) May a trial court decline to apply the presumption of law that one who holds title to real estate "possesses" such real estate where the court expressly finds that possession of the real estate at issue "was less than clear or shared by both parties" and that both competing parties were in possession of "at least a portion" of such real property?

(2) Where the law prescribes how a party "possesses" unenclosed woodland property in the context of an action to quiet title, may a trial court expressly ignore such legal definition and apply instead only "the common understanding" of that word to determine whether the court has the obligatory subject matter jurisdiction in the first instance?

*Duncan v. Chartiers Nature Conservancy*, 309 A. 3d 1011 (Pa. Mar. 12, 2024). [6]

---

[6] While the Duncans do not challenge the appealability of the trial court's order, we may raise this jurisdictional question *sua sponte*. *See Commonwealth v. Blystone*, 119 A.3d 306, 311 (Pa. 2015). The order on appeal, entered following preliminary objections, directed the Conservancy to file an ejectment action within 60 days. *See* Order, 3/7/2022. At first glance, this does not appear to be a final order. *See* Pa.R.A.P. 341(b)(1) (a final order "disposes of all claims and of all parties"). However, upon further review, we agree with the Superior Court that the order constitutes a final order **with respect to the Duncans' quiet title action**. *See Duncans*, 305 A.3d at *1 n.1.

As noted above, the Superior Court relied upon its own earlier decision in *Seven Springs Farm, supra*. In that case, the panel looked to the history of quiet title actions, prior to the enactment of Rule 1061. *See Seven Springs Farm*, 344 A.2d at 643 n.4. The panel noted that a party in possession of disputed land could apply for a rule returnable against a party not in possession who claimed an interest in the land "to bring an action of ejectment or show cause why the same could not be brought." *Id.* If the party not in possession failed to answer or show sufficient cause, the rule would be made absolute, and constitute a final, appealable judgment. *See id.* The *Seven Springs Farm* panel concluded that procedure was "substantively identical" to an order entered pursuant to Pennsylvania Rule of Civil Procedure 1066(b)(1), and determined the order was immediately appealable. *Id.* Rule 1066 provides that, in a quiet title action, the court may (continued…)

## IV. Presumption of Possession in Title Holder

In its first issue, the Conservancy insists that as record title holder of both Lots, it was entitled to a presumption of actual possession, and the trial court's failure to apply that presumption was an error of law. *See* Conservancy's Brief at 18-19.[7] The Conservancy emphasizes the trial court's "express finding" that possession of the Lots "was less than clear or shared by the parties" and that the Duncans were "in possession of at least a portion of both parcels[.]" *Id.* at 18-19 (*citing* Trial Court Opinion at 6). Relying on this Court's early 20th Century decision in *Mildren*, the Conservancy asserts that a party "cannot acquire jurisdiction if there is a mere contest, **however substantial** as to the fact of possession" in that party. *Id.* at 18 (emphasis in original) (*citing Mildren*, 87 A. at 607). Thus, the Conservancy argues the trial court's finding of "shared possession" of the Artinger and PNC Lots established there was only a "mere contest" as to possession, and therefore, the presumption of possession in the title owner (the Conservancy) should have applied. *Id.* at 20.

---

grant relief to the plaintiff by, *inter alia*, directing the defendant to take action (*i.e.*, file an ejectment action) within 30 days, or "be forever barred from asserting any right, lien, title or interest in the land inconsistent with the interest or claim of the plaintiff[.]" Pa.R.C.P. 1066(b)(1).

Similarly, the order on appeal in this case directed the Conservancy to file an ejectment action within 60 days. Although it did not include language that the failure to do so would result in the Conservancy being "forever barred" from challenging the Duncans' interest in the Lots, the result is the same. Pa.R.C.P. 1066(b)(1). Thus, we agree the trial court's March 7, 2022 order constituted a final order for purposes of the Duncans' quiet title action. Indeed, the Duncans did all they could to obtain a ruling as to the proper owner of the parcels.

[7] The Conservancy improperly cites a 2018 unpublished Superior Court decision — *Bruzgulis v. Landowners Wildlife*, 192 A.3d 221 (Pa. Super. 2018) (unpub. memo.) — to support its claim. *See* Conservancy's Brief at 18. While non-precedential decisions may be cited for persuasive value, our appellate rules limit such citations to unpublished Superior Court decisions filed **after May 1, 2019**, or unreported Commonwealth Court decisions filed after January 15, 2008. *See* Pa.R.A.P. 126(b)(1)-(2).

Conversely, the Duncans insist the Conservancy misinterprets both the law and the trial court's factual findings. *See* Duncans' Brief at 15-16. First, they argue that the Conservancy cites an unpublished Superior Court decision for the proposition that record title owners are entitled to a presumption of possession. *See id.* While they recognize that the unpublished decision relied upon a published case — *Overly v. Hixson*, 82 A.2d 573 (Pa. Super. 1951) — the Duncans maintain the panel omitted a crucial part of the quote from *Overly*: "**[I]n the absence of proof to the contrary**, actual possession is presumed to be in him who has the record title." Duncans' Brief at 16 (*citing Overly*, 82 A.2d at 575) (emphasis in original). Here, the Duncans' insist, the trial court found that they were in actual possession of at least a portion of both Lots based upon the evidence they presented — namely, the gates restricting access to the parcels. *See id.* Further, they point out that the Conservancy presented no evidence rebutting this claim of restricted access; rather, it relied upon aerial photographs purportedly depicting uncultivated land parcels. *See id.* at 17. Therefore, the Duncans contend the trial court properly determined that they "exercised dominion over the subject property by erecting gates limiting access" and using the land parcels for their topsoil business. *Id.* at 18. Because they were in actual possession of the Artinger and PNC lots, they maintain the court properly directed the out-of-possession deed holder — the Conservancy — to file an ejectment action.

The issue before us concerns only the preliminary jurisdictional question of possession for purposes of maintaining a quiet title action. Indeed, this determination frames the entire action. If, as the trial court determined, the Duncans were in possession of the properties, then they properly brought a Rule 1061(b)(1) action to compel the Conservancy to file an action in ejectment — and the trial court's order is correct. *See* Pa.R.C.P. 1061(b)(1). However, if they were not in possession of the properties, as the

Conservancy contends, then the trial court had no jurisdiction to consider their claim under Rule 1061, and its order must be reversed. Accordingly, the key question before us is what constitutes "possession" of property sufficient to satisfy the initial jurisdictional prerequisite in a Rule 1061(b)(1) action.

The Conservancy does not provide a clear answer. It does not describe or define what the Duncans were required to prove to show actual possession; it simply insists they did not do so. Instead, the Conservancy leans into its status as record title owner and argues that it was entitled to the **presumption of possession** under *Mildren* because the trial court's finding that possession was "less than clear or shared" constitutes only a "mere contest, however substantial as to the fact of possession in" the Duncans. Conservancy's Brief at 18 (*citing* Trial Court Opinion, 3/7/2022, at 6; *Mildren*, 87 A. at 609). However, we conclude the Conservancy's reliance on *Mildren* is misplaced, and the trial court's factual determination of "shared" or joint possession cannot be read in a vacuum.

This Court has refrained from adopting a precise definition of possession for purposes of a quiet title action. In *Moore v. Duran*, 687 A.2d 822 (Pa. Super. 1996), the Superior Court defined "actual possession of land" as "dominion over the property; … not the equivalent of occupancy." *Id.* at 827 (citation omitted). It further explained possession is a fact-dependent inquiry, based "to a large extent upon the character of the land in question." *Id.* (citation omitted). Black's Law Dictionary defines "Possession" as:

> **1.** The fact of having or holding property in one's power; **the exercise of dominion** over property. **2.** The right under which one may **exercise control over something to the exclusion of all others**; the continuing exercise of a claim to the exclusive use of a material object.

Black's Law Dictionary (12th Ed. 2024) ("POSSESSION") (some emphases added). In contrast, "actual possession" of land required for an adverse possession claim is "an

actual occupation; not a bare solitary trespass by an intruder[.]" *Hole v. Rittenhouse*, 25 Pa. 491, 495 (1855) (*Hole I*). *See also Ament's Ex'r. v. Wolf*, 33 Pa. 331, 336-337 (1859) ("The law draws the possession of unoccupied lands to the title, and when the courts define what kind of actual possession is necessary to oust the constructive possession of the owner, they are defining, not a fiction, but a fact — an actual, visible, and tangible possession.").

Here, the Duncans testified that, for more than 40 years, they consistently used both the Artinger and PNC Lots in connection with their business. They excavated topsoil from both properties, and used the land for mixing, staging and storage. Moreover, Jeffrey Duncan testified that the properties were surrounded by locked gates, to which only a limited number of people were provided the access codes. This testimony is sufficient to support the trial court's initial finding that the Duncans were in possession of at least a portion of the properties.

The Conservancy's evidence to the contrary was slim, and perhaps for good reason. It acquired the lands to preserve their "natural state" and "hold [them] open to public use." N.T., 10/13/2021, at 9. Thus, there would be no reason for the Conservancy to install a fence or erect a building; the whole purpose of its ownership was to keep the property pristine for open and unrestricted use by the public. Nevertheless, the only evidence it presented to rebut the Duncans' claim of possession was Google Earth aerial photographs taken over a number of years, which purportedly showed that the lots remained in their natural state until at least 2018. The Conservancy's evidence, however, did not refute the Duncans' testimony concerning their consistent use of the land, as well as the existence of locked gates restricting access.

Rather than focus on the evidence, the Conservancy emphasizes the trial court's findings that the Duncans were "in possession of **at least a portion** of both parcels[,]" or,

"at a minimum, **shared**" possession with the Conservancy.  Trial Court Opinion, 3/7/2022, at 6 (emphasis added); Trial Court Opinion, 8/19/2022, at 4 (emphasis added).  Relying upon our language in *Mildren*, the Conservancy insists the trial court could not "acquire jurisdiction" and enter the order on appeal, because there was only "a **mere contest**, however substantial as to the fact of" the Duncans' possession.  *Mildren*, 87 A. at 609 (emphasis added).  Accordingly, the Conservancy maintains that, as record title owner, its presumption of possession should have controlled.

The Conservancy misinterprets both the presumption of possession and the language in *Mildren*.  Ignoring the Conservancy's reliance upon an unpublished Superior Court decision, we note it is well-settled that "**in the absence of proof to the contrary**, actual possession is presumed to be in him who has the record title."  *Miners Sav. Bank of Pittston v. Tracy*, 192 A. 246, 249 (Pa. 1937) (emphasis added).  This presumption arose, however, in the context of land sales when more than one person — including the title holder — actually occupied the property.  In *Miners Sav. Bank*, this Court opined:  "It would be intolerable to require an intending purchaser or incumbrancer to ask every person living in a property, be they many or few, whether or not he has a better title than the record owner, **who is also in possession**."  *Id.* (emphasis added).  Here, the Conservancy suggests that we should apply the same presumption **when there is proof to the contrary**, and no evidence at all that the Conservancy, itself, ever exhibited any dominion or control over the land parcels.

As for *Mildren*, the facts and procedural history reveal a more limited holding than the Conservancy acknowledges.  In that case, the petitioners sought to quiet title to property of which they claimed they were in possession.  *See Mildren*, 87 A. at 607.  The respondents disputed the petitioners' claimed possession and, following a hearing, the trial court determined "the petitioners' jurisdictional averment of possession had not been

sustained, and that the respondents were in the **actual physical possession** of the property at the time the petition was filed." *Id.* (emphasis added). On appeal, the Superior Court disagreed, concluding "there was a substantial contest as to the possession of the property at the time the petition was filed," sufficient for the action to proceed. *Id.* This Court reversed, holding that the trial court "cannot acquire jurisdiction where there is a mere contest, however substantial as to the fact of possession in the petitioner." *Mildren*, 87 A. at 609.

The *Mildren* Court did not explain why the petitioners failed to prove possession, or specify what evidence was presented by each of the parties. Rather, it considered the case before it. Following a hearing, the trial court found the respondents were in possession of the property, and, therefore, the petitioners could not establish the jurisdictional prerequisite for their quiet title action. Nevertheless, the Superior Court overturned that ruling simply because the petitioners presented a "substantial contest" as to possession — a contest, however, they ultimately lost in the trial court. The Conservancy's attempt to equate the "substantial contest" in *Mildren* to the trial court's "shared possession" language in the present case fails. Here, the only party which presented evidence of actual possession — evidence that was credited by the trial court as fact finder — was the Duncans. Thus, *Mildren* does not compel a different result.

We recognize that, in the opinion accompanying its March 7th order, the trial court declared "the Duncans [were] in possession of **at least a portion** of both parcels that are legally owned by the Conservancy." Trial Court Opinion, 3/7/2022, at 6 (emphasis added). Moreover, in its subsequent Pa.R.A.P. 1925(a) opinion, the court elaborated that "possession was, at a minimum, **shared** between the [p]arties, or that the two sides **possessed different portions** of the [p]roperties." Trial Court Opinion, 8/19/2022, at 4 (emphases added). However, a review of the court's opinions confirms that, while the

Duncans presented evidence of their actual use (and possession) of the two Lots at issue, the Conservancy rested only upon its presumption of possession as deed holder. Further, the court opined that it "found the Duncans to be credible as to the point of their ongoing presence on, and use of, the [p]roperties." *Id.* Thus, the evidence presented by the Duncans was sufficient to rebut the Conservancy's presumption of possession and established more than a "mere contest" as to the fact of possession. *Mildren*, 87 A. at 609; *see also Miners Sav. Bank*, 192 A. at 249. Whether the Duncans can ultimately prove their claim of title to the entire Artinger and PNC Lots by adverse possession has yet to be determined.[8]

Accordingly, in order to bring a quiet title action under Rule 1061(b)(1), a plaintiff must establish, as a jurisdictional prerequisite, that it is in actual possession of the property at issue by demonstrating it exerts dominion or control over the property. So long as the plaintiff presents some evidence of actual possession, which the trial court deems credible, the record title holder's presumption of possession, **without more**, is insufficient to oust the court's jurisdiction. Our case law supports this conclusion and the Conservancy's argument does not persuade us otherwise. The requirement of more than a "mere contest, however substantial" to satisfy the jurisdictional prerequisite of possession does not mean the plaintiff must prove **uncontested** possession. If that were the case, very few quiet title actions would survive. Our holding simply reasserts the requirement that the plaintiff must present some credible evidence of its dominion or control over the property — otherwise, the presumption of possession in the record title holder prevails.

---

[8] "[O]ne who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years." *Baylor v. Soska*, 658 A.2d 743, 744 (Pa. 1995) (citation omitted).

Because the Duncans presented sufficient evidence to support this jurisdictional prerequisite, the Conservancy is entitled to no relief on its first issue.

## V. Unenclosed Woodlands

Next, the Conservancy argues that the trial court erred when it "expressly declined" to decide whether the Artinger and PNC Lots constituted "unenclosed woodlands," and, therefore, did not require the Duncans to meet the stricter test for possession of woodlands. Conservancy's Brief at 22.

Relying upon the Superior Court's definition in a prescriptive easement contest, the Conservancy describes woodlands as "an area 'occupied by herbaceous species both woody and shrub as well as grassy.'" Conservancy's Brief at 21 (*citing Williams v. Taylor*, 188 A.3d 447, 453 (Pa. Super. 2018)). It maintains the aerial photographs it submitted into evidence demonstrated that, for the past 20 years, the Lots "have been covered with trees and herbaceous vegetation[.]" *Id.* Thus, the Conservancy insists the Artinger and PNC Lots constitute woodlands.

Next, the Conservancy asserts there are only two circumstances in which a party may claim adverse possession of unenclosed woodlands: (1) where the adverse possessor "has both 'enclosed' **and** 'cultivated' the woodland, or (2) where the adverse possessor has established a residence thereon." Conservancy's Brief at 22 (emphasis in original) (*citing Niles v. Fall Creek Hunting Club, Inc.*, 545 A.2d 926 (Pa. Super. 1988)). While the trial court here determined that question was relevant only "within the actual merits of the underlying" adverse possession claim — not for the jurisdictional question of possession — the Conservancy insists the trial court's reasoning conflicts with the Superior Court's decision in *Bride v. Robwood Lodge*, 713 A.2d 109 (Pa. Super. 1998). Conservancy's Brief at 22-23. In *Bride*, the Conservancy asserts, the Superior Court

applied the stricter standard for possession of unenclosed woodlands when it concluded the plaintiff did not satisfy the **jurisdictional prerequisite** to bring a quiet title action. *See id.* at 23. Thus, the Conservancy concludes that the appropriate remedy here is to remand the matter to the trial court to consider (1) whether the Artinger and PNC Lots constitute unenclosed woodlands, and (2) if so, whether the Duncans proved their possession of those Lots under the stricter standard of either cultivation and enclosure, or establishment of a residence. *See id.* at 26.

The Duncans respond by first insisting the Conservancy's reliance on the Unenclosed Woodlands Act, 68 P.S. § 411,[9] as a jurisdictional question is misplaced. Rather, they maintain that the Act constitutes "an affirmative defense of illegality with respect to adverse possession and prescriptive easements which must be [pled] as a New Matter[.]" Duncans' Brief at 20. Further, they note that the defendants in *Bride* properly followed this procedure, by raising the question in their answer; however, in the matter before us, the Conservancy improperly raised this issue in preliminary objections. *See id.*

In the alternative, assuming the issue was properly before the trial court, the Duncans argue the evidence failed to demonstrate the Lots were, in fact, woodlands or that the Duncans did not enclose and cultivate the land. *See* Duncans' Brief at 23-25. They first contend the Conservancy's reliance upon the definition in *Williams* is misquoted. The Duncans insist the *Williams* Court defined "woodland" as "an area of land

---

[9] The Act, which appears in the Easement Chapter of Title 68, provides, in *toto*:

> No right of way shall be hereafter acquired by user, where such way passes through uninclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

68 P.S. § 411.

that trees and bushy undergrowth cover, synonymous with a 'forest'" — and that was not depicted in the Conservancy's photographs. *Id.* at 23 (*citing Williams*, 188 A.3d at 454). Moreover, the Duncans assert their evidence of the locked gates, as well as their "continued use and occupancy of the disputed property," was sufficient to demonstrate they enclosed and cultivated the properties. *Id.* at 23-24. Accordingly, they insist the Artinger and PNC Lots were not "unenclosed woodlands." *Id.* at 24-25.

With respect to adverse possession claims, this Court has long held that actual possession of woodland property requires more than simply an exercise of dominion over the land — rather, a party claiming adverse possession of woodlands must prove either possession by residence or enclosure and cultivation of the land. *See Hole v. Rittenhouse*, 37 Pa. 116, 118-119 (1860) (*Hole II*).

> [I]t is essential to the validity of an adverse possession that there shall be an actual entry upon the land of the rightful owner, and an actual, visible possession taken of some part of it. Residence and possession, with cultivation on adjoining land, with boundaries including the valid title of another, will not give actual possession of the latter, although accompanied by the ordinary use of it as woodland, in connection with the part resided upon or cultivated. To maintain an actual possession to woodland as such, it is indispensable that the intruder take actual possession, by residence or cultivation, of a part of the tract to which the woodland belongs. *Hole* [*I, II*]. Actual possession may be by residence without cultivation, or by inclosure and cultivation without residence; and when there has been such actual possession taken of part of the land of another, under a *bona fide* claim, accompanied by a designation of boundaries, and the ordinary use of the woodland, and such use and possession is continued for 21 years, the intruder gains a title to all included within his lines. …

*Olewine v. Messmore*, 18 A. 495, 496 (Pa. 1889).

The practicalities underlying this increased burden of proof are evident. Woodland, by its very nature, is undeveloped. Thus, the occasional or sporadic trespass to hunt, remove lumber, or pick berries is insufficient to establish actual possession of woodland for purposes of an adverse possession claim. *See Hole II*, 37 Pa. at 120; *Niles*, 545 A.2d

at 929; *Bride*, 713 A.2d at 112. Moreover, the Unenclosed Woodlands Act explicitly prohibits the acquisition of a prescriptive easement through unenclosed woodlands.[10] *See Martin v. Sun Pipe Line Co.*, 666 A.2d 637, 640-641 (Pa. 1995) (citing 68 P.S. § 411 ("No right of way shall be … acquired by user, where such way passes through un[e]nclosed woodland[.]")). Accordingly, a preliminary determination of whether property constitutes woodland is required in an adverse possession action to determine whether the plaintiff demonstrated actual possession of the land (*i.e.*, resided upon or cultivated and enclosed).[11]

Nevertheless, this Court has never considered whether a property's status as woodland is relevant to the preliminary jurisdictional question of possession required to maintain a Rule 1061(b)(1) action. Relying upon the Superior Court's decision in *Bride*, the Conservancy insists that it is, and the trial court here erred when it failed to hold the Duncans to the stricter level of proof.

In that case, Bride filed a quiet title action against several adjoining landowners (including Vargason and Chilson), asserting he acquired title to a parcel of land by

---

[10] Enacted in 1850, the Act was reenacted and amended in 1981, retroactive to 1974. *See* July 1, P.L. 198, No. 61, § 1. At that time, the discussion of the bill in the Pennsylvania Senate revealed that its "sole purpose" was to ensure "a user does not acquire [a] right-of-way by passing through unenclosed woodlands." Legislative Journal-Senate, March 31, 1981, at 328. Notably, here, the Duncans seek title to both Lots by adverse possession, not simply a prescriptive easement through the properties.

[11] While this Court has never attempted to craft a clear definition, the Superior Court has defined woodland — for purposes of the Unenclosed Woodlands Act — as "an area of land that trees and bushy undergrowth cover, synonymous with a 'forest.'" *Williams*, 188 A.3d at 454. *See Gruca v. Clearbrook Community Svcs. Assoc., Inc.*, 286 A.3d 1273, 1279 (Pa. Super. 2022) (relying upon *Williams*' definition of woodland). Similarly, the Merriam-Webster Dictionary defines "woodland" as "land covered with woody vegetation: TIMBERLAND, FOREST." www.merriam-webster.com/dictionary/woodland (last accessed 12/11/2025).

adverse possession. *See Bride*, 713 A.2d at 111. Vargason filed an answer and asserted that he adversely possessed the parcel in question; alternatively, he included a counterclaim in ejectment, maintaining he owned the parcel through his chain of title. *See id.* Following a bench trial, the court determined that Chilson, in fact, held record title to the land, but Bride acquired title by adverse possession. *See id.* Vargason appealed, asserting the parcel was woodlands, and that Bride failed to establish the "fundamental factual threshold required for an adverse possession claim of an unenclosed woodland[.]" *Id.* (citation omitted). The Superior Court agreed.

The panel first explained that a plaintiff bringing a quiet title action must demonstrate possession of the property as a "jurisdictional prerequisite" and "[w]ith respect to claims based on adverse possession, a plaintiff's **actual possession** meets this jurisdictional prerequisite." *Bride*, 713 A.2d at 111-112 (citations omitted; emphasis in original). Next, the Court noted that "actual possession of woodland" is established "by residence or cultivation of a part of the tract of land to which the woodland belongs." *Id.* at 112 (citation omitted). Thus, the Court reasoned that because Bride was seeking adverse possession of woodland, he was required to establish, preliminarily, that he either resided on or enclosed and cultivated the parcel in question. *See id.* However, the Court observed that, in the pleadings, Bride did "**not** allege that he had enclosed the disputed parcel or erected a residence upon it, and Vargason aver[red] that he adversely possessed the parcel." *Id.* at 112 (emphasis added). For this reason, the Superior Court concluded the trial court "lacked authority to act on Bride's petition and should have **dismissed** Bride's action to quiet title." *Id.* at 113 (emphasis in original; citations omitted). Accordingly, it reversed the trial court's judgment awarding Bride title by adverse possession.

The Superior Court in *Bride* went a step too far. The jurisdictional question of possession to maintain a Rule 1061(b)(1) quiet title action is, as we have explained, a **preliminary** determination. The purpose is to correctly frame the action that will inevitably follow. Thus, logic dictates that, at this early stage in the proceedings, the plaintiff asserting possession should only be required to demonstrate some dominion or control over the property to the exclusion of the title holder. To demand the stricter standard of possession applicable to woodland property, would also require the trial court to determine, at that early stage, whether the property was, in fact, woodland. That question is more difficult in cases, such as the one before us, where the record title owner did not raise the issue in preliminary objections and the parties dispute the designation of the parcels as "unenclosed woodlands."[12]

It is important to remember that the trial court's ruling did not constitute a decision on the merits of the Duncans' adverse possession claim. It simply recognized that the Duncans asserted dominion and control over the Artinger and PNC Lots to the exclusion of the Conservancy so that the Conservancy must file an ejectment action in order to preserve its clean record title. Although the burden to file an ejectment action shifts to the Conservancy, **the Duncans still retain the burden to prove their claim of title by adverse possession**. *See Baylor*, 658 A.2d at 744. And, if the trial court determines the parcels constitute woodlands, the Duncans will be required to demonstrate "actual possession" pursuant to the stricter standard — by residence or enclosure and cultivation of the tracts. *See Hole II*, 37 Pa. at 118-119.

Accordingly, we conclude the trial court did not err when it declined to consider whether the Artinger and PNC Lots constitute woodlands, or apply the stricter standard

---

[12] In fact, the Conservancy first referred to the property as woodlands, and addressed the stricter standard for possession of woodland property, in its post-hearing brief.

for possession. That determination is not required for the preliminary jurisdictional question of possession to maintain a Rule 1061(b)(1) quiet title action; rather, it is a question best left for the court in the ensuing adverse possession litigation.[13]

## VI. Conclusion

A party that seeks to quiet title to property by adverse possession pursuant to Rule 1061(b)(1) must demonstrate it is in actual possession of the property as a jurisdictional prerequisite; otherwise, a quiet title action will not lie. This jurisdictional prerequisite does not require uncontested possession. Rather, the party must demonstrate it exerts dominion and control over the property. A record title holder's presumption of possession, without more, is insufficient to rebut evidence of actual possession. Further, at this preliminary stage, the trial court need not consider whether the property at issue constitutes woodlands, or subject the party asserting adverse possession of the property to the stricter standard.

Order affirmed.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Mundy and Brobson join the opinion.

---

[13] Because we conclude that the court need not determine whether the disputed property is woodlands at this stage in the proceedings, we decline to address the Duncans' claim that it must be raised as an affirmative defense.